UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EXCELSIOR COLLEGE,

|                          |                  |
|--------------------------|------------------|
|                          | 1:17-CV-0011     |
| Plaintiff,               | (GTS/DJS)        |

v.

ROBBIE WOLFF,

                        Defendant.
_____

| APPEARANCES:                          | OF COUNSEL:                  |
|---------------------------------------|------------------------------|
| HESLIN ROTHENBERG FARLEY & MESITI P.C. | DAVID P. MIRANDA, ESQ.      |
|   Counsel for Plaintiff     | SHANNA K. SANDERS, ESQ.      |
| 5 Columbia Circle                     |                              |
| Albany, New York 12203                |                              |
|                                       |                              |
| SCHLAM STONE & DOLAN LLP              | RICHARD H. DOLAN, ESQ.       |
|   Co-Counsel for Defendant  |                              |
| 26 Broadway, 19th Floor               |                              |
| New York, New York 10004              |                              |
|                                       |                              |
| LAW OFFICE OF H. DANA VANHEE PLLC     | H. DANA VANHEE, ESQ.         |
|   Co-Counsel for Defendant  |                              |
| 120 East Washington Street, Suite 721 |                              |
| Syracuse, New York 13202              |                              |

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this trademark-infringement action filed by Excelsior

College ("Plaintiff") against Robbie Wolff ("Defendant"), is Defendant's motion to dismiss

Plaintiff's Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

(Dkt. No. 23.)  For the reasons set forth below, Defendant's motion is denied.

# I.    RELEVANT BACKGROUND

## A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint alleges that, between approximately 2008, and September 29, 2017, in or around Albany, New York, Defendant violated the rights of Plaintiff by advertising and selling a test preparation service that uses Plaintiff's registered marks.  (*See generally* Dkt. No. 17.)  More specifically, Plaintiff's Amended Complaint alleges as follows.  (*Id.*)

Plaintiff is a private, not-for-profit higher education institution.  (*Id.*)  To receive an associate degree from Plaintiff's nursing program, all students must pass Plaintiff's capstone examination (a Clinical Performance Nursing Exam or "CPNE"), which is offered exclusively by Plaintiff.  (*Id.*)  On February 20, 2007, Plaintiff was issued U.S. Service Mark Registration No. 3,210,451 (the "451 Registration") for its CPNE mark.  (*Id.*)  Plaintiff's use of the CPNE mark has been continuous and extensive since as early as March 18, 1975.  (*Id.*)  Plaintiff also owns and maintains U.S. Copyright Registrations for other works including the following two works: (1) a CPNE Study Guide (22nd Edition) with U.S. Copyright Registration No. TX-8-381-077; and (2) a CPNE Study Guide (21st edition) with U.S. Copyright Registration No. TX-7-978-705. (*Id.*

Defendant is a former student of Plaintiff's nursing program.  (*Id.*)  Defendant owns a business that purports to provide training services and materials for individuals seeking an associates degree of nursing through Plaintiff.  (*Id.*)  Defendant advertises educational services, test preparation services, and related products in interstate commerce using the mark CPNE without authorization from Plaintiff.  (*Id.*)

Defendant uses the domain names www.robscpne.com and www.robbie-wolff.com to direct users to his website where he advertises and sells his products. (*Id.*) Defendant's domain names contain underlying source codes that include the words "CPNE" and "Excelsior College" as keywords and meta-tags. (*Id.*) In addition, Defendant advertises his products and services using the CPNE mark on various social media sites including Facebook where he uses the handle @RobsCPNE. (*Id.*) On multiple occasions beginning on September 20, 2016, Plaintiff demanded that Defendant cease his unlawful use of the CPNE mark; but Defendant has refused to do so. (*Id.*)

All enrolled Excelsior College students sign an Application for Admission (previously known as an Enrollment Form) in which the student agrees in a binding contract to comply with and be bound by all requirements and policies of Plaintiff, including its Academic Honesty Policy. (*Id.*) The Academic Honesty Policy includes clauses that prevent the facilitation of academic dishonesty and cheating. (*Id.*) As a former student, Defendant signed the Enrollment Form. (*Id.*)

"Upon investigation and information," Plaintiff alleges that Defendant requests CPNE test questions and exam feedback from Plaintiff's students who take the CPNE exam, then Defendant provides CPNE test questions and feedback to Plaintiff's students preparing to take the CPNE exam. As a result, Defendant has violated, and caused Plaintiff's students to violate, the Academic Honesty Policy. (*Id.*)

Generally, based on these factual allegations, the Amended Complaint asserts the following ten claims: (1) a claim of false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Count One"); (2) a claim false advertising and unfair competition

pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Count Two"); (3) a claim of

trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1114 ("Count Three"); (4) a

claim of cyberpriacy pursuant to the Lanham Act, 15 U.S.C. § 1125(d) ("Count Four"); (5) a

claim of trademark infringement pursuant to New York common law ("Count Five"); (6) a claim

of false advertising pursuant to New York General Business Law § 350 ("Count Six"); (7) a

claim of tortious interference with a contract pursuant to New York common law ("Count

Seven"); (8) a claim of copyright infringement pursuant to the Copyright Act, 17 U.S.C. §§ 101

*et seq.* ("Count Eight"); (9) a separate and distinct claim of copyright infringement pursuant to

the Copyright Act, 17 U.S.C. §§ 101 *et seq.* ("Count Nine"); and (10) a claim of unfair

competition pursuant to New York common law ("Count Ten").  (*Id.*)

### B. Parties' Briefing of Defendant's Motion

#### 1. Defendant's Memorandum of Law

Generally, in support of his motion to dismiss, Defendant asserts the following three

arguments: (1) the Amended Complaint fails to state a claim under the Lanham Act because

application of the nominative fair use factors shows that there is no infringement; (2) the

copyright claims do not state a claim for infringement because they are so general and abstract

that it is impossible to tell whether there is any plausible factual basis for the copyright claims;

and (3) Plaintiff fails to state a claim under state law for (a) common law trademark infringement

because Plaintiff fails to allege any basis for infringement or consumer confusion, (b) false

advertising pursuant to General Business Law § 350 because Defendant's use of the name CPNE

was not misleading in any way, (c) unfair competition under common law because there are no

plausible allegations that Defendant's use of the name CPNE was "unfair" or any allegations

plausibly suggesting Defendant's bad faith, and (d) tortious interference with a contract because

Plaintiff's allegations are implausible given the nature of the CPNE exam (which is a performance-based test as opposed to written exam), every coaching service trains the test-taker in how to answer questions likely to be on the test, and there is no plausible allegation that any breach of contract occurred. (*See generally* Dkt. No. 23, Attach. 7 [Def.'s Mem. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in response to Defendant's motion, Plaintiff asserts the following three arguments: (1) the Amended Complaint states claims under the Lanham Act because (a) with regard to Counts One and Three, the factually intensive likelihood-of-confusion or nominative-fair-use analyses which Defendant asks the Court to undertake, are premature and inappropriate, (b) with regard to Count Two, the Amended Complaint alleges that Defendant has repeatedly used the CPNE mark in his marketing and advertising to prospective students, which conveys the false impression that he is affiliated with or sponsored by Plaintiff, and (c) with regard to Count Four, the Amended Complaint alleges that Plaintiff's federally registered CPNE mark was distinct at the time Defendant registered domain names confusingly similar to Plaintiff's CPNE mark, and, as a former student of Plaintiff's, Defendant knew of Plaintiff's rights in and to the CPNE mark and therefore acted in bad faith; (2) the Amended Complaint states claims of copyright infringement because it identifies the infringed works, asserts ownership of copyrights in those works, states that Plaintiff registered its copyrights, and specifies that Defendant violated and continues to violate Plaintiff's copyrights by copying, reproducing, preparing derivative works, and/or using substantial portions of the CPNE Study Guides as part of his commercial enterprise targeting Plaintiff's students; and (3) the Amended Complaint states claims under New York law because (a) with regard to Count Five, the elements of trademark

infringement under New York state common law mirror those of the Lanham Act and thus, for

the same reasons that Plaintiff states Lanham Act claims, Plaintiff states a claim of trademark

infringement under New York common law, (b) with regard to Count Six, the Amended

Complaint alleges that Defendant's repeated, intentional, and bad faith use of the CPNE mark in

his commercial marketing and advertising to students conveys the false impression that he is

affiliated with or sponsored by Plaintiff and misrepresents the nature, characteristics, and/or

qualities of the infringing products, (b) with regard to Count Ten, the factual predicate from

which the Court can infer bad faith (namely, Defendant's knowledge of Plaintiff and Plaintiff's

trademark rights) has been adequately pled, and (c) with regard to Count Seven, the Amended

Complaint alleges that Defendant had knowledge of the contract and terms that students of

Plaintiff must sign, yet Defendant asks Plaintiff's students who have taken Plaintiff's CPNE

exam to send him test questions and exam feedback, which he then provides to other students

who are preparing to take the next CPNE exam, causing Plaintiff's students to breach Plaintiff's

Academic Honest Policy.  (*See generally* Dkt. No. 25 [Pl.'s. Opp'n Mem. of Law].)

### 3.    Defendant's Reply Memorandum of Law

Generally in his reply, Defendant argues as follows: (1) the Court should dismiss the

Lanham Act claims based on the trademark nominative fair use doctrine because (a) the case law

cited by Plaintiff stated that "[a] court can consider whether fair use applies on a motion to

dismiss," (b) Plaintiff and Defendant sell complimentary (not competing) products and thus the

only claim Plaintiff, could state is that Defendant uses the CPNE mark to suggest sponsorship by

Plaintiff but Plaintiff alleges no facts to support such an allegation, (c) with regard to Count

Four, the cases cited by Plaintiff are inapplicable in that, in one case the court did not find bad

faith, and in the other case the court found bad faith but from entirely different, egregious facts, and (d) with regard to Plaintiff's unfair competition claim, knowledge is necessary to a finding of bath faith but is not alone sufficient, and Plaintiff fails to allege a basis for a finding of bad faith; (2) Plaintiff failed to support its copyright infringement claims because Plaintiff failed to identify what portions of Defendant's content is alleged to be infringing Plaintiff's copyright; and (3) the claim of tortious interference with a contract is insufficient because, much like the trademark infringement claim, Plaintiff provides a recitation of the elements then alleges only that Defendant improperly obtained and then disclosed CPNE test questions without providing any factual details. (*See generally* Dkt. No. 26 [Def.'s Reply Mem. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

---

[1]        *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are

### B. Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which is intended primarily for the review of the parties. (*See generally* Dkt. No. 23, Attach. 7 [Def.'s Mem. of Law]; Dkt. No. 25 [Plf.'s. Opp'n Mem. of Law]; Dkt. No. 26 [Def.'s Reply Mem. of Law].)

## III. ANALYSIS

### A. Counts One, Two, and Three

After carefully considering the matter, the Court denies Defendant's motion for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 25 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

---

"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

### 1.      Counts One, Two, and Three–Review of Jonathan Mase[3]

Defendant argues that Plaintiff's claims are implausible because Plaintiff's Amended

Complaint included a review of Defendant's customer Jonathan Mase, which Plaintiff used to

illustrate that Defendant sells products in New York.  (Dkt. No. 17, Attach. 5.)

After carefully considering the matter, the Court denies Defendant's motion for the

reasons stated in Plaintiff's opposition memorandum of law: the Mase review does not plausibly

suggest a lack of wrongdoing by Defendant because the review does not "exemplify" the

infringement.  (Dkt. No. 25, at 10, n.3 [Pl.'s Opp'n Mem. of Law].)

For these reasons, the Court denies Defendant's motion to dismiss Counts One, Two, and

Three, based on Defendant's reliance on the review of Jonathan Mase.

### 2.      Counts One, Two, and Three–Nominative Fair Use Doctrine[4]

As the Second Circuit has noted, "[T]he doctrine of nominative fair use allows '[a]

defendant [to] use a plaintiff's trademark to identify the plaintiff's goods so long as there is no

likelihood of confusion about the source of [the] defendant's product or the mark-holder's

sponsorship or affiliation.'"  *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010)

(quoting *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 413 [S.D.N.Y.

2006]); *see also Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002) (holding that

an assertion of nominative fair use gives rise to a modified likelihood of confusion analysis).

---

[3]      Although Defendant fails to articulate which claims he is attacking through his analysis of the review of Mr. Mase, the Court will consider it as applicable to Counts One, Two, and Three, all of which relate to consumer confusion about the products or services offered by Defendant.

[4]      *See, supra,* footnote 3 of this Decision and Order.

The Second Circuit adopted the doctrine of nominative fair use in a trademark infringement action and held that, "in nominative use cases, district courts are to consider the Ninth Circuit and Third Circuit's nominative fair use factors, in addition to the *Polaroid* factors." *Int'l Info. Sys. Sec. Certification Consortium v. Sec. Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016). The *Polaroid* factors are an eight-factor balancing test:

> (1) the strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp v. Wolf's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). In addition to the *Polaroid* factors, courts are to consider the nominative fair use factors:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

*Int'l Info. Sys. Sec. Certification Consortium*, 823 F.3d at 168. The Second Circuit has also made clear that courts are to apply the appropriate factors even "where a factor is irrelevant to the facts at hand." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995).

"The Second Circuit has made clear–and district courts routinely state–that determining the likelihood of confusion is a [sic] 'a fact-intensive inquiry that depends greatly on the particulars of each case' and 'ordinarily does not lend itself to a motion to dismiss.'" *Cree, Inc.*

*v. Xiu Ping Chen*, 16-CV-1065, 2017 WL 3251580, at *5 (E.D.N.Y. July 28, 2017) (quoting

*Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 [2d Cir. 2013]; *Van Praagh v. Gratton*, 993 F. Supp.

2d 293, 303 [E.D.N.Y. 2014]); *see also Rescuecom Corp. v. Google Inc*., 562 F.3d 123, 130 (2d

Cir. 2009) (holding that the Court has "no idea whether the Rescuecom can prove that Google's

use of Rescuecom's trademark in its AdWords program causes likelihood of confusion or

mistake"); *Manigault v. ABC, Inc.*, 17-CV-7375, 2018 WL 2022823, at *4 (S.D.N.Y. Apr. 12,

2018) ("Whether Manigault will be able to establish the existence of a 'plausible likelihood that

consumers would be confused' goes to the merits of his trademark infringement claims.

Similarly, whether the doctrine of nominative fair use applies . . . , [is a] merit[] issue[] to be

determined on a summary judgment motion or at trial.").

### a.     *Polaroid* Factors

### i.      Strength of the Mark

"The strength of a mark refers to its ability to identify the source of the good being sold

under its aegis." *Brennan's Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 130 (2d Cir. 2004).

"The concept of strength includes both inherent distinctiveness and acquired distinctiveness

through use in commerce." *Brennan's Inc*., 360 F.3d at 130-31.

Here, because Plaintiff's mark is registered, it is presumed to be inherently distinct.  (Dkt.

No. 17, at ¶ 15.)[5]  Moreover, the Amended Complaint alleges facts plausibly suggesting the

mark's acquired distinctiveness.  For example, it alleges that "Excelsior College's use of the

CPNE® mark has been continuous and extensive since at least as early as March 18, 1975, and

predates the acts complained of herein regarding the mark.  Each year Excelsior College spends

---

[5]          *Brennan's Inc*., 360 F.3d at 130-31.

significant sums of money advertising and marketing its CPNE mark and services." (*Id.* at ¶¶ 17-18.)

As a result, Plaintiff has sufficiently pled the strength of its mark based on the combination of inherent distinctiveness and the acquired distinctiveness that the mark has attained through use in commerce. *Cree, Inc.*, 2017 WL 3251580, at *5-6.

### ii. Similarity of the Marks

Plaintiff alleges that Defendant's marks are confusingly similar or identical to its mark and provides images of Defendant's use of Plaintiff's mark. (Dkt. No. 17, at ¶ 24.) This is sufficient to plausibly suggest that Plaintiff's mark and Defendant's mark are similar.

### iii. Competitive Proximity of the Products in the Marketplace and the Likelihood that the Senior User Will Bridge the Gap

The Amended Complaint alleges that Plaintiff is a private, not-for-profit, higher education institution, which offers, among other things, an associate-degree nursing program. (*See generally* Dkt. No. 17.) The Amended Complaint alleges that all students in the program must pass Plaintiff's CPNE capstone examination. (*Id.* at ¶ 12.) The Amended Complaint alleges that Plaintiff also offers test preparation services and materials to prepare its students for the CPNE examination. (*Id.* at ¶ 13.) Finally, the Amended Complaint alleges that "Defendant's business purports to provide training services and materials for individuals seeking an associates degree of nursing through Excelsior College of New York State." (*Id.* at ¶ 30.)

Alleging that Plaintiff and Defendant sell the same products is sufficient to allege that the products are in close competitive proximity to one another. *Cree, Inc.*, 2017 WL 3251580, at *6. "For the same reason, the bridging the gap factor is irrelevant in this case because the parties sell

the same product and are, thus, in direct competition." *Cree, Inc.*, 2017 WL 3251580, at *6

(citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 218 [2d Cir. 2003] ["Since the

sauce products are in direct competition, this factor is not relevant."]).

### iv.     Actual Confusion

The Second Circuit has acknowledged that "it is black letter law that actual confusion

need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to

prove and the Act requires only a likelihood of confusion." *Guthrie Healthcare Sys. v.

ContextMedia, Inc.*, 826 F.3d 27, 45 (2d Cir. 2016) (quoting *Lois Sportswear, U.S.A., Inc. v. Levi

Strauss & Co.*, 799 F.2d 867, 875 [2d Cir. 1986]).  Moreover, "if actual confusion need not be

shown to ultimately prevail, then it similarly need not be pled." *Cree, Inc.*, 2017 WL 3251580,

at *6 (citing *Gruthie Healthcare Sys.*, 826 F.3d at 45).

Here, Plaintiff has not pled actual confusion.  (*See generally* Dkt. No. 17.)  "Had plaintiff

pled facts supporting this fact, that would, of course, have strengthened its case . . . . [B]ut failing

to do so is not dispositive or even 'significant.'"  *Cree, Inc.*, 2017 WL 3251580, at *6 (citing

*Gruthie Healthcare Sys.*, 826 F.3d at 45).

### v.     Bad Faith and Respective Quality of the Products

Plaintiff alleges that Defendant is a former student of Plaintiff's and thus has knowledge

of Plaintiff's mark.  (Dkt. No. 17, at ¶ 40.)  *See Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d

373, 389 (2d Cir. 2005) ("Bad faith may be inferred from the junior user's actual or constructive

knowledge of the senior user's mark.").  Moreover, Plaintiff alleges that "Defendant was placed

on notice that his use of the CPNE® mark infringes the rights of Excelsior College.  Excelsior

College demanded that Defendant cease his unlawful use of the CPNE® mark on multiple

occasions beginning on September 20, 2016 and Defendant has refused to do so." (Dkt. No. 17, at ¶ 36.) Plaintiff also alleges that "Defendant registered the domain name www.robscpne.com under an alias using a privacy protection service in order to conceal his identity, which is further evidence of Defendant's bad faith." (Dkt. No. 17, at ¶ 81.) Finally, Plaintiff alleges that "Defendant's infringement has and continues to injure the goodwill of Excelsior College and its high-quality products and services." (*Id.* at ¶ 70.)

The Second Circuit held that, where the plaintiff's products are of a superior quality than the defendant's, this factor in the *Polaroid* analysis favors plaintiff. *Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 234 F.3d 1262, at *5 (2d Cir. 2000); *see also Cree, Inc.*, 2017 WL 3251580, at *7.

Based on Plaintiff's factual allegations, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that this factor also weighs in favor of Plaintiff.

### vi.  Sophistication of Consumers in the Relevant Market

"The more sophisticated and careful the average customer of a product is, the less likely it is that similarities in . . . trade marks will result in confusion concerning the source or sponsorship of the product." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992).

Based on Plaintiff's factual allegations, the purchasers of Plaintiff's and Defendant's products are individuals involved in a nursing program offering an associates degree. The Court therefore finds that this factor weighs in favor of Defendant.

### b.    Other Factors

The Court finds that, at this stage of the proceeding, it is unable to determine whether the use of Plaintiff's mark is necessary to describe Defendant's product or service, whether Defendant uses only so much of Plaintiff's mark as is necessary to identify his product or service, and whether the Defendant did anything that would suggest sponsorship or endorsement by Plaintiff.

Defendant argues that he uses Plaintiff's mark only as much as necessary to identify his products and services and avoids anything that would suggest sponsorship or endorsement by Plaintiff. (Dkt. No. 23, Attach. 7, at 14-18.) However, the Court finds no support for these arguments contained within the four corners of the Amended Complaint or its attachments. (*See generally* Dkt. No. 17.) To the contrary, the Amended Complaint and its attachments include screenshots of Defendant's website, which extensively and explicitly use Plaintiff's mark and refer to Plaintiff directly. (*Id.*)

The Court finds plausible the allegation that a purchaser and/or user of Defendant's test preparation services could be confused and incorrectly believe that Defendant is sponsored by, approved by, or in some way are affiliated with Plaintiff. (Dkt. No. 17, at ¶ 24.) For example, Defendant's website purports to provide training services and materials for individuals seeking an associates degree of nursing through Excelsior College of New York State. (*Id.* at ¶ 30.) In addition, the Amended Complaint includes three images from Defendant's website, in which each includes Plaintiff's CPNE mark. (*Id.* at ¶ 24.)

For these reasons, the Court denies Defendant's motion to dismiss Counts One and Three based on Defendant's argument that his "use" of Plaintiff's CPNE mark constitutes nominative fair use.

### B.    Count Four

To state a claim under of cyberpiracy pursuant to 15 U.S.C. § 1125(d), a plaintiff must allege facts plausibly suggesting the following two elements:  "(1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark."  *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 430 (S.D.N.Y. 2013).

Here, Defendant argues that Plaintiff does not allege facts to plausibly support elements two and three.  With regard to element two, Plaintiff alleges that Defendant's domain name is www.robscpne.com, which includes Plaintiff's CPNE mark in the domain name and is confusingly similar to the CPNE mark owned by Plaintiff.  (Dkt. No. 17, at ¶¶ 24, 79.)  With regard to element three, Plaintiff alleges that Defendant derives substantial revenue from services provided in New York and interstate commerce.  (*Id.* at ¶¶ 33-34.)  Plaintiff also alleges facts, which taken as true, plausibly suggest that Defendant had knowledge of Plaintiff's rights to the CPNE mark and Defendant registered the domain name using a privacy protection service to conceal his identity with bad faith intent to profit from the CPNE mark.  (*Id.* at ¶ 80-81.)

Defendant also argues that Plaintiff's allegations are not plausible because the domain www.robscpne.com directs users to http://robbie-wolff.com and the content is "replete with references to Defendant, Robbie Wolff, by name, including testimonials and reviews."  (Dkt. No. 23, Attach. 7, at 21.)  The Court finds that Plaintiff's allegations are plausible because Defendant's website is also replete with Plaintiff's mark and references to Excelsior College/Excelsior University, which could cause confusion, and Plaintiff alleges that Defendant acted in bad faith with intent to profit from its mark.

For these reasons, the Court finds that Plaintiff has sufficiently stated a claim of cyberpiracy pursuant to the Lanham Act.

## C. Counts Eight and Nine

After carefully considering the matter, the Court denies Defendant's motion for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 25 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

A "complaint alleging copyright infringement must state: '[1] which specific original works are the subject of the claim, [2] that plaintiff owns the copyright, [3] that the works have been registered in accordance with the copyright statute[,] and [4] by what acts and during what time defendant has infringed the copyright.'" *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 440 (S.D.N.Y. 2012) (quoting *Franklin Elec. Publishers, Inc. v. Unisonic Prods. Corp.*, 763 F. Supp. 1, 4 [S.D.N.Y. 1991]).

Here, the Amended Complaint alleges that "Excelsior College is the original author of and owns and maintains U.S. Copyright Registrations for many of its works, including . . . A. *Clinical Performance in Nursing Examination (CPNE) Study Guide (22nd Edition)*. U.S. Copyright Registration No. TX 8-381-077, registered on January 12, 2017 . . . B. *Clinical Performance in Nursing Examination (CPNE) Study Guide (21st edition)*. U.S. Copyright Registration No. TX 7-978-705, registered on October 16, 2014." ("Copyrighted Works") (Dkt. No. 17, at ¶ 21.) In addition, the Amended Complaint alleges that "Defendant has copied or directed the copying of substantial portions of the Copyrighted Works identified in paragraph 21. (*Id.* at ¶ 45.) The Amended Complaint also alleges that "Defendant . . . sells and distributes materials, portions of which are copied or derived from Excelsior College's" Copyrighted

Works. (*Id.* at ¶¶ 109, 117.) Finally, the Amended Complaint includes screenshots from Defendants website that appears to include videos entitled "The Basics of the CPNE–22nd edition" and "The Basics of the CPNE–21st edition." (Dkt. No. 17, Attach. 2, at 49.)

Based on these factual allegations, and drawing all reasonable inferences in Plaintiff's favor for purposes of this motion, the Court finds that Plaintiff has stated claims for Copyright Infringement (Counts Eight and Nine).

### D.      Counts Five, Six, Seven, and Ten

After carefully considering the matter, the Court denies Defendant's motion for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 25 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

### 1.      Count Five–Common Law Trademark Infringement

"A claim of trademark infringement under New York law requires proof of the same elements and can be 'analyze[d] . . . together' with a Lanham Act claim." *Smith v. Mikki More, LLC*, 58 F. Supp. 3d 595, 616 (S.D.N.Y. 2014) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 101 n.6 [2d Cir. 2010] and citing N.Y. Gen. Bus. Law § 360-k).

As discussed above in Part III.A.3. of this Decision and Order, Plaintiff's trademark infringement claim pursuant to the Lanham Act survives this motion. Therefore, Defendant's motion to dismiss Plaintiff's common law trademark infringement claim is also denied.

### 2.      Count Six–False Advertising

To establish a claim for false advertising pursuant to N.Y. Gen. Bus. Law § 350, Plaintiff must sufficiently allege that (1) the challenged act or practice was consumer-oriented, (2) the challenged act or practice was misleading in a material way, and (3) that plaintiff suffered an

injury as a result of the receptive act. *Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941 (N.Y. 2012); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000).

In his motion, Defendant challenges only the second element of this claim, i.e., that he was not deceiving consumers. (Dkt. No. 23, Attach. 7, at 23-24.) As set forth in Plaintiff's opposition memorandum of law, the Amended Complaint sufficiently alleges that Defendant's use of Plaintiff's CPNE mark in his commercial marketing and advertising conveys the false impression that he is affiliated with or sponsored by Plaintiff. (Dkt. No. 25, at 16.)

For these reasons, the Court finds that Plaintiff has sufficiently stated a claim of common law false advertising.

### 3. Count Seven–Tortious Interference with Contract

To plead a claim of tortious interference with a contract under New York law, Plaintiff must allege facts plausibly suggesting the following five elements: "[1] the existence of a valid contract between plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996).

The Amended Complaint alleges that all students, including Plaintiff, enrolled at Excelsior College are required to sign an "Application for Admission," which was previously known as an "Enrollment Form." (Dkt. No. 17, at ¶ 37.) The Amended Complaint alleges that, in the Application for Admission, the student agrees to comply and be bound by all requirements and policies of Plaintiff, including the Academic Honesty Policy. (*Id.*) The Amended Complaint alleges that the Application for Admission (previously called the Enrollment Form) is

a binding contract between Plaintiff and the student. (*Id.* at ¶ 38.) The Amended Complaint alleges that the Academic Honest Policy prevents students from obtaining an examination prior to its administration and undertaking any activity intended to obtain an unfair advantage over other students. (*Id.* at ¶ 39.) The Amended Complaint alleges that Defendant asks students who took the CPNE exam to send him test questions and exam feedback, which he then provides to other Excelsior College students who are preparing to take the CPNE exam. (*Id.* at ¶ 41.) Finally, the Amended Complaint alleges Defendant's actions caused students to breach their contract with Plaintiff, which damaged and continues to damage Plaintiff. (*Id.* at ¶¶ 102-104.)

Defendant argues that Plaintiff's allegations are not plausible because the CPNE is a practical exam as opposed to a written exam. (Dkt. No. 23, Attach. 7, at 26-28.) Defendant also argues that all test preparation services involve training the test-taker how to answer the type of questions likely to be on the test. (*Id.* at 28.) Respectfully, the Court declines to test the veracity of Plaintiff's allegations or to weigh the sufficiency of the evidence supporting the allegations contained in the Amended Complaint on a motion to dismiss: Defendant's arguments are more appropriate for a motion for summary judgment.

Therefore, the Court finds that Plaintiff has sufficiently stated a claim of tortious interference with a contract.

### 4. Count Ten–Unfair Competition

The elements under New York law for a claim of unfair competition are identical to the elements of unfair competition under the Lanham Act, except that Plaintiff must also allege "bad faith by the infringing party." *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 541 (S.D.N.Y. 2010); *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).

Defendant argues that there are no plausible allegations that Defendant's use of the name CPNE was "unfair" or that Defendant acted in bad faith. (Dkt. No. 23, Attach. 7, at 24.)

Here, the Amended Complaint alleges that Defendant uses an identical mark with the intention to profit from the goodwill of Plaintiff's mark. (Dkt. No. 17, at 129.) The Amended Complaint also alleges Defendant had actual knowledge of Plaintiff's rights to the CPNE mark and used it with the bad faith intent to profit from the CPNE mark. (*Id.* at ¶ 81.)

Under the circumstances, the Court finds that these allegations are sufficient to support an inference of bad faith. *Kaplan, Inc.*, 16 F. Supp. 3d at 351 (citing *Peek & Cloopenburg KG v. Revue, LLC,* 11-CV-5967, 2012 WL 4470556, at *6 [S.D.N.Y. Sept. 19, 2012]; *Pearson Educ., Inc. v. Kumar*, 721 F. Supp. 2d 166, 191 [S.D.N.Y. 2010]).

For these reasons, the Court finds that Plaintiff has sufficiently stated a common law claim of false advertising.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 23) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant file an answer to the Plaintiff's Amended Complaint within **FOURTEEN (14) DAYS** of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a), and this case is referred back to Magistrate Judge Stewart for a Rule 16 conference and the setting of pretrial scheduling deadlines.

Dated:      August 16, 2018
            Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

24